UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KENNETH R. LAX, )<br>)<br>　　　　　Plaintiff　　)<br>)<br>　　vs.　　　　　　　　　)　　CAUSE NO. 3:02-CV-621 RM<br>)<br>CITY OF SOUTH BEND, et al.,　)<br>)<br>　　　　　Defendants　)  | |

## OPINION AND ORDER

This cause is before the court on the plaintiff's motion for judgment on the pleadings and on the motions of two sets of defendants for summary judgment. Plaintiff Kenneth Lax contends that various officials of South Bend and St. Joseph County, Indiana, violated his rights under the First and Fourth Amendments to the United States Constitution, and sues for damages under 42 U.S.C. § 1983. The court has jurisdiction pursuant to 28 U.S.C. § 1343(3). For the reasons that follow, the court grants the defendants' motions and denies the plaintiff's motion.

*Facts*

On August 30, 2000, South Bend police officer Michael Wilcox pulled over a car driven by Kenneth Lax and ticketed him for traveling (according to the ticket) 50 miles per hour in a 30 mile an hour zone. On October 25, 2000, Mr. Lax demanded a jury trial on the infraction charge. The superior court set Mr. Lax's cause for jury trial on January 18, 2001 at 9:30 a.m. and set a final pretrial for

January 11, 2001 at 8:30 a.m. The superior court conducts all jury trial for infractions at the Mishawaka, Indiana, courthouse.

On January 11, Mr. Lax appeared at the South Bend courthouse for the pretrial conference set for Mishawaka. Mr. Lax spoke with deputy superior court clerk Julie Igaz, who couldn't find the information on Mr. Lax's court hearing. Superior court clerk Linda Scopelitis tried to help. She searched the county computer system for a court date, but the computer didn't disclose a scheduled January 11 court appearance for Mr. Lax; Ms. Scopelitis could only find the January 18 trial date in Mishawaka. Mr. Lax insisted that he had a January 11 date and became upset about the lack of information. Ms. Scopelitis consulted a bailiff and had Mr. Lax speak with a deputy prosecutor.

As Mr. Lax grew more upset, Ms. Scopelitis determined that Mr. Lax's paper docket was in Mishawaka. Jury trials on speeding tickets are uncommon in the superior court, and the clerk's records showed only the trial date, not the pretrial conference setting.

St. Joseph County Police Rickey Lee Morton, who was assigned to the superior court's Traffic & Misdemeanor Division courtroom that day, heard cursing and screaming coming from outside the courtroom. About the time Judge Brian Steinke told Officer Morton to "take care of that problem," clerks from the Traffic & Misdemeanor Office came into the courtroom and told Officer Morton that Mr. Lax was a causing problem in the hallway. Officer Morton left the courtroom and asked Mr. Lax what was the matter. Mr. Lax, speaking loudly

2

about his court date, believed he had missed a scheduled court appearance. Unable to calm Mr. Lax, Officer Morton told Mr. Lax he would have to leave the courthouse.

Mr. Lax started to descend the staircase to the first floor of the courthouse, but stopped at the balcony, turned, spoke more, and began walking back up the stairs. Officer Morton confronted Mr. Lax on the staircase, took him to the bottom of the staircase, and then to exit, and Mr. Lax was made to leave the courthouse.

Some time later on January 11, Mr. Lax appeared before superior court Judge William Whitman in Mishawaka and apologized for his tardiness. After learning from the deputy prosecutor that Judge Whitman had vacated the jury trial setting, Mr. Lax said he wanted to waive his jury demand because he was missing too much work for court appearances. The trial was rescheduled — this time for a bench trial in South Bend — for February 8.

That trial date was continued and, after a variety of docket entries, the trial was conducted on March 5, 2002 before Judge John M. Marnocha. Mr. Lax represented himself, cross-examined Officer Wilcox (the only prosecution witness), and testified in his own behalf. Judge Marnocha found for the State and against Mr. Lax. Mr. Lax appealed the judgment, but the Indiana Court of Appeals dismissed the appeal in August 2002 for failure to prosecute the appeal.

These events led to a federal civil rights case that has lasted for three years. Mr. Lax sues two sets of defendants. He sues Officer Wilcox, past and present South Bend Police Chiefs Larry Bennett and Thomas Fautz, and the Civil City of

3

South Bend (the City defendants) for what Mr. Lax contends was a racially motivated stop and ticketing by Officer Wilcox. He sues Ms. Scopelitis and Ms. Igaz for giving him false information about his court date — which he believes resulted in the suspension of his driving privileges — and sues Officer Morton and county police superiors for his removal from the South Bend courthouse (the County defendants).

The defendants seek summary judgment on all claims.

*Summary Judgment Standard*

In his memorandum explaining why the defendants should not be granted summary judgment, Mr. Lax cites to Haines v. Kerner, 404 U.S. 519 (1972), for the proposition that since he represents himself, his claims must be construed under a less stringent standard than if pursued by an attorney. Mr. Lax is correct to the extent he recites the standard to determine the sufficiency of a complaint. To the extent Mr. Lax contends that a different measuring stick applies to the sufficiency of his summary judgment submission, he is mistaken. On that score, the same standard applies to pro se submissions and to attorney's submissions. McNeil v. United States, 508 U.S. 106, 113 (1993).

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding

4

whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

*The City Defendants*

Mr. Lax believes there was an interrelationship between his race and Officer Wilcox's use of a "pacing" method to determine Mr. Lax's speed. Mr. Lax contends that the pacing method of determining a vehicle's speed is outdated, ineffective, and to be used by police officers only when modern technology, such as radar, is

5

unavailable. He argues that the City and the police chiefs are at constitutional fault for allowing Officer Wilcox to stop motorists for speeds determined by the pacing method. Officer Wilcox testified at Mr. Lax's state trial that he has stopped hundreds of motorists using this method, but other than Mr. Lax, whose attitude during the stop inspired a ticket, Officer Wilcox couldn't remember issuing any other tickets to those motorists.

It isn't entirely clear whether Mr. Lax believes his race inspired only the traffic stop or the ticket, as well. Mr. Lax draws a link between the "attitude" attributed to him and his own character, and cites Indiana Rule of Evidence 404(b) (which is nearly the same as Federal Rule of Evidence 404(b)) for the proposition that people shouldn't be ticketed for their character. Regardless of the admissibility of evidence of Mr. Lax's attitude over proper objection — the only proper application of a rule of evidence — Mr. Lax was ticketed for speeding, not attitude or character. Maybe Officer Wilcox would not have ticketed Mr. Lax had Mr. Lax's attitude been different, but the ticket was for speeding.

Mr. Lax's argument about the stop and the ticket center around his claim of innocence. He says in his affidavit that he was traveling precisely 28 miles per hour and, so, could not have been speeding. Ordinarily, Mr. Lax's affidavit would suffice to create a fact issue that would make summary judgment improper. This is not the ordinary case, however: Mr. Lax went to trial on his denial of the speeding allegation, and he lost. Mr. Lax had his day in court on the issue of whether he was speeding, and he lost on that issue in a court of general

6

jurisdiction. Because Indiana courts would give preclusive effect to that judgment on that issue, this court cannot entertain any claim to the contrary. *See* United States Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623, 628-630 (7th Cir 2003). Until that judgment is set aside by a court with the authority to review it (and this court has no such authority), this court must accept, regardless of any proof by Mr. Lax, that Mr. Lax was speeding before Officer Wilcox pulled him over. Similarly, whether the trial judge was biased (as Mr. Lax claims) would be a matter for an Indiana appellate court, not for this court.

Given that Mr. Lax must be deemed to have been speeding, the summary judgment record contains no evidence that could allow a reasonable trier of fact to find or infer that it is more likely than not that the traffic stop was (as Mr. Lax says) based on racial profiling. That a speeder was stopped and ticketed for speeding provides no basis for an inference of racial motivation. That Mr. Lax was speeding provided ample basis for Officer Wilcox to stop him. No jury could find for Mr. Lax on his claim against Officer Wilcox. And if the summary judgment record cannot support a finding that Officer Wilcox violated Mr. Lax's constitutional rights, the city and the police chiefs cannot be liable for allowing, helping, or not preventing a violation of Mr. Lax's constitutional rights by Officer Wilcox. Treece v. Hochstetler, 213 F.3d 360, 364 (7th Cir. 2000).

The City defendants are entitled to judgment as a matter of law on Mr. Lax's claims.

*The County Defendants*

The county defendants submitted the 122-page superior court record as an exhibit in support of their summary judgment motion. The court was surprised and frustrated to discover that the county defendants scanned almost every page of that exhibit into this record upside down. The court managed to work its way through that record and hopes (but, of course, cannot promise) that any reviewing court will show similar persistence.[1]

Once properly oriented, the superior court record demonstrates that no reasonable trier of fact could find that Ms. Scopelitis or Ms. Igaz violated any of Mr. Lax's constitutional rights. Regardless of the defendants' ability to provide accurate and immediate information, Mr. Lax simply went to the wrong courthouse for his court appearance. He was supposed to be in Mishawaka, but he was in South Bend. Nothing that Ms. Scopelitis or Ms. Igaz did or failed to do caused Mr. Lax to be in the wrong courthouse.

Further, neither Ms. Scopelitis nor Ms. Igaz harmed Mr. Lax's right of access to the courts by their inability to respond more quickly to his inquiries. Contrary

---

[1] The court also urges the county defendants to exercise considerably more care when purporting to quote case law in future briefs. *See* Defendants' Memorandum of Law [docket #158-9, filed June 14, 2005], at 12 (purported quotation from Henry v Farmer's City State Bank, 808 F.2d 1228, 1238-1239 (7th Cir. 1986)), 14 (purported quotations from Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002), and Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002)) and 15-16 (purported quotation from "Palmer, 327 F.3d at 594," the full citation of which does not appear in the brief).

Earlier in these proceedings, the county defendants asked the court to dismiss the case because Mr. Lax missed the deadline for providing his contentions in a timely manner. Courts generally have more patience with *pro se* litigants who do not do what attorneys are expected to do than for attorneys who do not do what attorneys are expected to do.

to Mr. Lax's understanding, the state court record plainly shows that no default judgment was entered against him on January 11. The only consequence of his failure to appear in Mishawaka in a timely manner was Judge Whitman vacating the jury trial setting, and Mr. Lax voluntarily withdrew his jury demand hours later. Mr. Lax complains that his failure to appear was somehow reported to the Bureau of Motor Vehicles and that his license was suspended as a result, but nothing in this record would allow either a finding that the report to the Bureau had anything to do with January 11 (the state court record reflects several other failures to appear) or a finding that Ms. Scopelitis or Ms. Igaz had anything to with such a report.

Even more fundamentally, no reasonable jury could find on this record that Ms. Scopelitis or Ms. Igaz intended to do anything that might deprive Mr. Lax of access to the courts, and Mr. Lax cannot prevail on his claim with proving intentional conduct. <u>Kincaid v. Vail</u>, 967 F.2d 594, 602 (7th Cir. 1992). The giving of false information is not, as Mr. Lax seems to assume, the same as doing so intentionally.

Ms. Igaz and Ms. Scopelitis are entitled to judgment as a matter of law on Mr. Lax's claims against them.

The issues concerning Officer Morton are somewhat more difficult. In Mr. Lax's earlier unsworn submissions and in his contentions in the pretrial order, he alleged that Officer Morton dragged him down the stairs in the courthouse stairwell and physically threw him out of the courthouse door. In his evidentiary

9

submissions in support of his motion for judgment on the pleadings and in opposition to the summary judgment motions, Mr. Lax's claims appear to be somewhat different: he says in his affidavit that he "was attacked by Officer R. L. Morton of the St. Joseph County Sheriff's Department and thrown out of the court house . . . ."

Because a summary judgment court is not to consider the legal conclusions contained in an affidavit, Mr. Lax's version of the facts does not appear to differ greatly from Officer Morton's version. Officer Morton explains in his affidavit that once Judge Steinke told him to take care of the problem in the hallway, he had the choice of arresting Mr. Lax or removing Mr. Lax from the courthouse. He tried to calm Mr. Lax down, but met with no success, and then told Mr. Lax he would have to leave. Part way down the stairs, Mr. Lax started to walk back up. Officer Morton says he confronted Mr. Lax on the staircase, placed his hand on Mr. Lax's elbow, and led him to the bottom of the staircase. This touching, he explains, fell somewhere between "verbal commands" and "soft hand control" in the "force continuum" training taught at the Indiana Police Academy.

Mr. Lax seizes on Officer Morton's concession that he touched Mr. Lax: "R. L. Morton admitted, in his response to plaintiffs request for admissions, that he did in fact place his hands upon plaintiff and remove him from the courthouse. This act was done by Morton violently, arbitrarily, maliciously, and without probable cause, and it violated plaintiffs right to access to the court." Mr. Lax provides no details about what he describes as an attack, and the quoted portion

of his brief strongly suggests that, with the benefit of legally-charged adjectives, Mr. Lax views the touching that Officer Morton describes as "an assault." No reasonable juror could find that an officer's placing of a hand upon an angry citizen complaining profanely among the public in the courthouse hallway, and doing so loudly enough to disrupt the proceedings in an adjoining courtroom, constituted an unreasonable use of force. *See* Graham v. Connor, 490 U.S. 386, 396 (1989).

Mr. Lax contends that the court's ruling on a discovery issue somehow has interfered with his right to proceed on this claim and has violated his rights under Federal Rule of Evidence 1002. He complains that the court denied his motion to compel the city defendants to produce a videotape of the events in the stairwell on January 11. Federal Rule of Evidence 1002 provides no right of access to any evidence; it simply limits the methods by which a party may prove the content of a writing, recording, or photograph. The rule would not prevent Mr. Lax from testifying to those events even if a videotape existed. *See* FED. R. EVID. 1004(2, 3).

Even apart from Mr. Lax's misunderstanding of the evidence rule, the court's ruling on the motion to compel would stand. The city defendants deny having any such videotape, and Mr. Lax hasn't come forth with anything to the contrary, other than his own insistent belief that they must have such a videotape. Indeed, other than Mr. Lax's unsupported claim that such a videotape would have been created that day, the court has no reason to think such a videotape ever existed. Finally, since the stairwell is located in a public building

11

not owned or operated by the city, the court has no reason to think the city ever would have possessed such a videotape.

Finally, Mr. Lax's brief in response to the summary judgment motion indicates that his claim against Officer Morton might be based on an alleged deprivation of access to the courts rather than to the use of excessive force. If so, Officer Morton is entitled to judgment as a matter of law on that theory, as well. As was already discussed, Mr. Lax had no business on January 11 in the courthouse in South Bend; he was in the processing of missing his court date in the courthouse in Mishawaka. Officer Morton's removal of Mr. Lax from the courthouse in South Bend did not impair Mr. Lax's right of access to the courts.

*Conclusion*

For all of the foregoing reasons, the court DENIES the plaintiff's motion for judgment on the pleadings [docket #154], GRANTS the city defendants' motion for summary judgment [docket #162 ], and GRANTS the county defendants' motion for summary judgment [docket #158]. The clerk shall enter judgment for the defendants and against the plaintiff.

SO ORDERED.

ENTERED:   September 27, 2005

/s/ Robert L. Miller, Jr.
The Honorable Chief Judge
United States District Court